[No. B233514. Second Dist., Div. Three. Jan. 30, 2013.]

WINDSOR PACIFIC LLC, Plaintiff and Appellant, v.
SAMWOOD CO., INC., Defendant and Respondent;
SHADOW PINES, LLC, Defendant and Appellant.

**COUNSEL**

McLeod, Moscarino, Witham & Flynn and John P. Flynn for Plaintiff and Appellant.

Michelman & Robinson, Eric J. Rans, Robin James and Stephen R. Isbell for Defendant and Appellant.

Joseph Di Giulio; and Howard Posner for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—Windsor Pacific LLC (Windsor) seeks to establish a prescriptive easement over two access roads on undeveloped land in northern Los Angeles County owned by Samwood Co., Inc. (Samwood), and Shadow Pines, LLC (Shadow). Windsor used the roads for several years with Shadow's permission and pursuant to a written easement agreement with Shadow. The trial court, after a nonjury trial, granted judgment in favor of both Shadow and Samwood, holding that Windsor's use of the roads did not create a *prescriptive* easement over either the Samwood property or the Shadow property because Windsor's use of those roads was expressly authorized by a prior *permissive* easement granted to Windsor. In a postjudgment order, the trial court denied Shadow's motion for an award of attorney fees pursuant to a contractual attorney fee provision included in the written agreement that had led to the creation of the aforesaid permissive easement. Windsor appealed from the judgment only with respect to the denial of a prescriptive easement over the *Samwood* property. Shadow has appealed from the order denying the requested attorney fee award.

Windsor contends that the permissive easement granted by its written agreement with Shadow applied only to use of the access roads on Shadow's property. Such easement agreement, Windsor argues, does not apply to use of the access roads on Samwood's property because Shadow did not have the authority to grant such an easement to Windsor. We reject that argument and hold, under the undisputed facts in this case, that Windsor is equitably estopped to deny or question Shadow's authority to grant an easement over the Samwood property. In view of this conclusion, we will affirm the judgment.

Shadow's appeal argues that the attorney fee provision in the easement agreement with Windsor authorizes a fee award in this case. We agree and hold that an attorney fee clause providing for a fee award to the prevailing party in "any action or proceeding to enforce or interpret" a contract applies not only where the plaintiff's allegations in the complaint seek to enforce or interpret the contract, but also where the defendant seeks to do so by asserting an affirmative defense raised in its answer. We will therefore reverse the postjudgment order denying Shadow's motion for an award of attorney fees and remand with directions to grant the motion and determine the amount of the award.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

Windsor owns 80 acres of undeveloped land in the Canyon Country area of northern Los Angeles County. Windsor acquired the property in August and November 2003. Allen Hubsch, a real estate attorney, is Windsor's principal.

Samwood owns 160 acres of undeveloped land adjoining and immediately south of the Windsor property. Samwood acquired the property prior to 2003. Shadow owns more than 160 acres of undeveloped land immediately south of the Samwood property. Shadow acquired the property in three separate acquisitions beginning in 2006.

Tick Canyon Road traverses the Shadow property and the southeast corner of the Samwood property where Tick Canyon Road intersects with Trash Canyon Road. From that intersection, Trash Canyon Road leads north through the Samwood property toward the Windsor property. Both roads are unpaved. Hubsch began using the two roads by car in late 2002 or early 2003 when he first visited the area looking for investment property. He traveled the two roads on numerous occasions thereafter. A surveyor, a geologist and others hired by Hubsch also traveled the two roads on numerous occasions.

Samwood entered into a written agreement with Synergy, a Land & Development Company (Synergy), in April 2003 granting Synergy an option to purchase the Samwood property during a specified term. Samwood also granted Synergy "a license . . . to enter upon the Property . . . for the purpose of inspections and tests, and generally in connection with its investigation of the Property and its prospects for development . . . ." The option agreement also stated that Synergy was "entitled to full access to and entry upon the Property at all times convenient to it and may allow its representatives and contractually retained independent contractors to enter in aid of Buyer's prospective development plans." The option agreement was later assigned to another company and then to Shadow, and its term was extended. Samwood and Shadow later amended the option agreement and further extended its term.

Windsor and Shadow entered into a written agreement regarding easements (ARE) in March 2006. The ARE stated that Shadow owned the Shadow property and held options to purchase the Samwood property. It provided that Windsor would execute two written agreements granting easements to Shadow over the Windsor property upon the satisfaction of certain conditions, including the approval of a tentative map and a conditional use permit for development of the Samwood and Shadow properties. It stated that Shadow

could terminate the ARE at any time prior to the Windsor's delivery to Shadow of such easements, and that upon such termination Shadow would deliver to Windsor a signed agreement, known as a "Termination Easement," granting Windsor an easement over the Samwood and Shadow properties. It also stated that Windsor could terminate the ARE if Shadow's options expired and were not timely renewed, if Shadow failed to timely obtain an approved tentative map satisfying certain requirements and in other circumstances.

Section 19.5 of the ARE stated that if either party exercised its right to terminate the ARE, "then . . . neither Party shall have any further obligation to the other Party other than (i) pursuant to Section 17 and Section 3.3 for acts or occurrences prior to the date of termination, and (ii) pursuant to this Section." The two referenced sections related to indemnification. Section 19.5 went on to state that within 30 days after the termination of the ARE Shadow must execute in favor of Windsor a quitclaim of any easements provided to Shadow by Windsor.

Under the heading "General Provisions" and the subheading "Governing Law," the ARE included a provision for an award of attorney fees to the prevailing party "[i]n any action or proceeding to enforce or interpret the provisions of this Agreement."[1]

The conditions for Windsor's execution of the two easement agreements relating to Shadow's use of the Windsor property were never satisfied, and the easements were never executed. Shadow gave notice of its termination of the ARE pursuant to the termination provision in a letter to Windsor dated August 11, 2006. Shadow provided Windsor a signed Termination Easement at that time, granting Windsor a nonexclusive easement over the two access roads on the Samwood and Shadow properties, Tick Canyon Road and Trash Canyon Road, "as such roadways may reasonably be relocated from time-to-time by Grantor [Shadow]." The Termination Easement stated further that the exact location of the easement area could change in accordance with the requirements and conditions for approval of the proposed development.

Windsor claimed a prescriptive easement over the two access roads on the Samwood property for the first time in February 2009.

---

[1] The attorney fee clause stated in full: "In any action or proceeding to enforce or interpret the provisions of this Agreement, the prevailing party (as determined by the court, arbitrators, agency or other authority before which such suit, arbitration or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to its reasonable attorneys' fees, expenses, and costs of investigation incurred in connection therewith (including, without limitation, attorneys' fees, expenses and costs of investigation incurred in appellate proceedings, costs incurred in establishing the right to indemnification, or in any action or participation in, or in connection with, any case or proceeding under Chapter 7, 11 or 13 of the Bankruptcy Code, 11 United States Code Sections 101 et seq., or any successor statutes)."

## 2. *Trial Court Proceedings*

Windsor filed a complaint against Samwood and Shadow in October 2009 alleging counts for (1) quiet title, seeking to quiet title to a prescriptive easement over Tick Canyon Road and Trash Canyon Road for private or public use; (2) ejectment, alleging that defendants had obstructed Windsor's use of the two roads and seeking to restore such use; and (3) declaratory relief, seeking a declaration as to the rights and obligations of the parties with respect to the two roads.

A nonjury trial in January 2011 resulted in a judgment in favor of defendants. The trial court filed a memorandum of decision in February 2011 stating, "This Memorandum of Decision shall constitute a Statement of Decision, if one is so requested, unless within the time period provided by law, additional requests are made by a party in conformity with statutory procedures and the Rules of Court." No party requested a statement of decision.

The memorandum of decision stated that Windsor and Shadow began to negotiate the ARE in mid-2005 and orally agreed at that time that each had permission to travel over the other's property. It stated that the ARE executed in March 2006 expressly granted such permission and that the Termination Easement later delivered to Windsor granted Windsor a permissive easement over the two access roads. It stated that Windsor's use of the roads therefore was permissive beginning no later than mid-2005 and that Windsor had failed to prove by clear and convincing evidence that its use of the roads was adverse for a five-year period, as necessary to establish a prescriptive easement. The trial court entered a judgment in March 2011, awarding Windsor no relief on its complaint against either defendant. Windsor timely appealed the judgment.

Shadow moved for an attorney fee award in April 2011 based on the attorney fee provision in the ARE and Civil Code section 1717. Windsor argued in opposition that this was not an action "to enforce or interpret the provisions of [the ARE]" within the meaning of the attorney fee provision and that this was not an "action on a contract" (Civ. Code, § 1717, subd. (a)). Windsor also argued that the amount of fees requested was unreasonable. The trial court denied the motion "[f]or all the reasons stated in the Plaintiff's Opposition." Shadow timely appealed the order.

## CONTENTIONS

Windsor challenges the judgment in favor of Samwood on the count for quiet title. Windsor contends (1) its use of the two roads was adverse to

Samwood for a period in excess of five years because Samwood never consented to Windsor's use; (2) the trial court erred by placing the burden of proof of adverse use for a period of five years on Windsor rather than requiring Samwood to prove that Windsor's use was permissive; and (3) the court erred by requiring that such proof be made by clear and convincing evidence.

Shadow challenges the denial of its motion for an attorney fee award, contending this is an action "to enforce or interpret the provisions of [the ARE]" within the meaning of the attorney fee provision.

## *DISCUSSION*

### 1.   *Windsor Is Not Entitled to a Prescriptive Easement*

#### a.   *Prescriptive Easement and Adverse Use*

■   A prescriptive easement is established by use of land that is (1) open and notorious, (2) continuous and uninterrupted, and (3) adverse to the true owner, and that is all of these things (4) for a period of five years. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584]; *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321–322 [178 Cal.Rptr. 624, 636 P.2d 588]; Civ. Code, § 1007; Code Civ. Proc., § 321 [five-year period].) Periods of prescriptive use by successive owners of the dominant estate can be "tacked" together if the first three elements are satisfied. (Rest.3d Property, Servitudes, § 2.17; see *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 295 [75 Cal.Rptr. 699].) Whether each of these elements is satisfied is a question of fact. (*Warsaw, supra*, 35 Cal.3d at p. 570.)

The term "adverse" in this context is essentially synonymous with "hostile" and " 'under claim of right.' " (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252 [41 Cal.Rptr.3d 32]; see *Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450 [17 Cal.Rptr.3d 135].) A claimant need not believe that his or her use is legally justified or expressly claim a right of use for the use to be adverse.[2] (*Aaron, supra*, at p. 1252; *Felgenhauer, supra*, at p. 450.) Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights. (*Sorensen v. Costa* (1948) 32 Cal.2d 453, 459 [196 P.2d 900]; see 6 Miller & Starr, Cal.

---

[2] For this reason, the term "claim of right" is imprecise and potentially misleading when used in this context. (See Bruce & Ely, The Law of Easements and Licenses in Land (2012 ed.) Creation of Easements by Prescription, § 5:8, pp. 5-28 to 5-30 (rel. 9/2012) (Bruce & Ely) ["Adverse use is sometimes characterized as a use made under a claim of right, but such a description is imprecise because a claim need not be formally asserted, nor must the use be made with the belief that it is lawful." (fns. omitted)].)

Real Estate (3d ed. 2012) Easements, § 15:35, p. 15-133 (rel. 8/2006).) In other words, a claimant's use is adverse to the owner if it is wrongful and in defiance of the owner's property rights. (See Bruce & Ely, *supra*, § 5:8, p. 5-28 (rel. 9/2012).)

Use with the owner's permission, however, is not adverse to the owner. (*Aaron v. Dunham, supra*, 137 Cal.App.4th at p. 1252; *Richmond Ramblers Motorcycle Club v. Western Title Guaranty Co.* (1975) 47 Cal.App.3d 747, 754 [121 Cal.Rptr. 308]; see Rest.3d Property, Servitudes, § 2.16, com. f, p. 228.) To be adverse to the owner a claimant's use must give rise to a cause of action by the owner against the claimant. (See 6 Miller & Starr, Cal. Real Estate, *supra*, § 15.29, p. 15-111 (rel. 8/2006); 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 403, p. 472.) This ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so. (See Bruce & Ely, *supra*, § 5:8, p. 5-32 (rel. 9/2012); 2 American Law of Property (1952) Easements, § 8.53, p. 269, fn. 1.)

### b. *Windsor Is Equitably Estopped from Claiming a Prescriptive Easement*

■ Windsor used the two access roads on the Samwood property with the express permission of Shadow under the terms of the Termination Easement beginning in August 2006 at the latest. The Termination Easement stated that Shadow owned an interest in both the Shadow property and the Samwood property and granted Windsor a nonexclusive easement to use the access roads on the two properties. In our view, Windsor's continued use of the two access roads in these circumstances precludes its claim that its use of the roads was adverse to Samwood as owner of the Samwood property. We believe that this is true irrespective of whether or not Shadow actually had the authority to grant Windsor an easement over the Samwood property. As we explain, we hold that Windsor is equitably estopped to deny the existence of such authority.

■ "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264].) The

detrimental reliance must be reasonable. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 938 [143 Cal.Rptr. 255].)

The determination of equitable estoppel ordinarily is a question of fact for the trier of fact, unless the facts are undisputed and can support only one reasonable conclusion as a matter of law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158]; *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].) In this case, the evidence compels the conclusion, as a matter of law, that each of the essential elements is satisfied and that Windsor is estopped to deny that Shadow had the authority to grant Windsor an easement over the two access roads on the Samwood property.[3]

The first element is satisfied because the evidence clearly shows that Windsor (acting through Hubsch) had, sometime after mid-2005, formed the intent to claim a prescriptive easement over the two access roads on both the Shadow and Samwood properties, yet it failed to disclose such intention to either Shadow or Samwood. Windsor was well aware such a prescriptive easement was totally inconsistent with its permissive use of the property. Nonetheless, Windsor at no time before February 2009 ever (1) questioned or disputed Shadow's authority to grant permission to Windsor to use the two access roads on the Samwood property or (2) asserted any claim for a *prescriptive* easement.

Regarding the second element, Windsor and Shadow entered into the ARE in March 2006, including the provision that Shadow would grant Windsor an easement to use the access roads on *both* the Shadow and Samwood properties upon Shadow's termination of the ARE. This shows the parties' understanding that Shadow did have the authority to grant Windsor an easement over the Samwood property. Moreover, when issues arose as to the condition or use of the Samwood property, Windsor contacted Synergy (Shadow's predecessor in interest) and later Shadow, rather than Samwood, suggesting that Windsor recognized Synergy's and Shadow's authority with respect to use of the Samwood property. This evidence compels the conclusion that Shadow and Samwood had a right to rely on the appearance created by Windsor's conduct that its use of the access roads on the Samwood property was permissive and was not adverse to Samwood, which satisfies the second element.

---

[3] Shadow alleged estoppel as an affirmative defense in its answer, but neither defendant argued equitable estoppel at trial. Nonetheless, we may consider the issue for the first time on appeal because it involves a question of law based on facts established by the record and does not require the resolution of conflicting evidence. (*California Horse Racing Bd. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 1169, 1173 [64 Cal.Rptr.3d 222].)

The third element is satisfied because Samwood and Shadow were unaware until February 2009 that Windsor intended to claim a prescriptive easement based on its use of the access roads on the Samwood property. Finally, the fourth element is also satisfied because both Samwood and Shadow would be injured if, after Windsor had negotiated for and agreed to receive a *permissive* easement, its continued use of the two access roads were held to give rise to a *prescriptive* easement. Both Samwood and Shadow were entitled to rely on their understanding that Windsor's use of the two access roads on the Samwood property was permissive, until the time that Windsor claimed otherwise.

We therefore hold that the essential elements of equitable estoppel are satisfied as a matter of law and that Windsor therefore may not deny Shadow's authority to grant Windsor an easement over the two access roads on the Samwood property. Windsor's use of the roads on the Samwood property was permissive and thus not adverse to Samwood. The trial court correctly concluded that Windsor is not entitled to a *prescriptive* easement.[4]

### 2. *Shadow Is Entitled to a Contractual Attorney Fee Award*

#### a. *Standard of Review*

Shadow contends it is entitled to a fee award pursuant to the attorney fee clause in the ARE. Whether a contractual attorney fee clause provides for a fee award in a particular case is a question of contract interpretation. We interpret a contract de novo if the interpretation does not turn on the credibility of extrinsic evidence, as here. (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238 [52 Cal.Rptr.2d 82, 914 P.2d 160]; *Kalai v. Gray* (2003) 109 Cal.App.4th 768, 777 [135 Cal.Rptr.2d 449].)

#### b. *Shadow Is the Prevailing Party in an Action to Enforce or Interpret the ARE*

An attorney fee clause can provide for an attorney fee award in an action on the contract or, if worded more broadly, can provide for a fee award in any litigation between the parties. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 [71 Cal.Rptr.2d 830, 951 P.2d 399].) Civil Code section 1717 governs a fee award in an action on a contract. (*Santisas*, at p. 615.) Civil Code section 1717 is inapplicable, however, to noncontract claims. (*Santisas*,

---

[4] In light of our conclusion, we need not address Windsor's contentions that the trial court improperly placed the burden of proof of adverse use for a period of five years on Windsor or that the court improperly required Windsor to prove such adverse use by clear and convincing evidence.

*supra*, at p. 619; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1832–1833 [31 Cal.Rptr.2d 253].)[5]

■ Our goal in interpreting a contract is to give effect to the mutual intention of the contracting parties at the time the contract was formed. (Civ. Code, § 1636.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (*Id.*, §§ 1639, 1647.) We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation. (*Id.*, § 1641.) We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.*, § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.*, § 1638.)

The attorney fee clause in the ARE provides for an attorney fee award to the prevailing party "[i]n any action or proceeding to enforce or interpret the provisions of this Agreement." In our view, this action does involve the interpretation of the ARE with respect to the meaning of this provision. We have interpreted the ARE in determining that the provision requiring Shadow to grant an easement in favor of Windsor over both the Shadow and the Samwood properties upon the termination of the ARE shows the parties' understanding that Shadow had the authority to grant Windsor an easement over the Samwood property. Such determination was necessary to our conclusion that Windsor is equitably estopped from claiming that its use of the roads on the Samwood property was adverse to Samwood, precluding a prescriptive easement.

■ Thus, we believe that this action is an "action or proceeding to . . . interpret the provisions of this Agreement" within the meaning of the ARE, whether Windsor seeks to enforce or interpret the ARE in its complaint or Shadow seeks to do so in its answer. Put another way, it does not matter whether such interpretation has been sought by the allegations of a complaint or by affirmative defenses in an answer. We understand the words "action or proceeding," used in accordance with their ordinary and popular sense, to encompass the entire action or proceeding, including both the complaint and any responsive pleading, such as an answer. (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387 [150 Cal.Rptr. 841]; see Black's Law Dict. (9th ed. 2009) p. 32, col. 2 [defining "action" as, inter alia, "A civil or criminal

---

[5] Neither party has raised any issue with respect to the application of Civil Code section 1717 and we therefore have no reason to discuss it further. The dispositive issue presented here with respect to the award of attorney fees is whether this is "an[] action . . . to enforce or interpret" the ARE within the meaning of that agreement's attorney fee clause.

judicial proceeding"].) In our view, an action in which a party seeks to enforce or interpret a contract in connection with either a claim alleged in the complaint or a defense alleged in an answer will constitute an action to "enforce or interpret" the contract. There is, however, case law that arguably supports a contrary conclusion.

*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698 [75 Cal.Rptr.2d 376] (*Exxess*) and *Gil v. Mansano* (2004) 121 Cal.App.4th 739 [17 Cal.Rptr.3d 420] held that whether the attorney fee clauses at issue in those cases authorized a fee award in favor of the prevailing party depended on the nature of the claims alleged in the complaint or cross-complaint, irrespective of the defenses raised. *Exxess* involved a clause in a lease providing for an attorney fee award to the prevailing party " '[i]f any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder.' " (*Exxess, supra*, 64 Cal.App.4th at p. 702.) The lessee filed a cross-complaint against its real estate broker alleging contract and tort claims. The case was settled before trial, and the cross-complaint was dismissed with prejudice. (*Id.* at p. 704.) The Court of Appeal assumed for purposes of argument that the cross-defendant was the prevailing party. (*Id.* at p. 712.) *Exxess* stated that even if the cross-defendant effectively enforced the terms of the lease by asserting a defense based on an "as is" clause, asserting a defense was not "bringing" an action or proceeding within the meaning of the attorney fee clause. (*Ibid.*)

*Exxess* also distinguished an "action" from a "defense," stating in essence that the word "action" refers to the complaint and does not encompass a defense. (*Exxess, supra*, 64 Cal.App.4th at p. 712, fn. 15, citing primarily Black's Law Dict.) *Exxess* therefore concluded that the cross-defendant was not entitled to a contractual attorney fee award by virtue of its assertion of the defense. (*Ibid.*) *Exxess* noted that the attorney fee clause at issue was very narrowly drawn. (*Ibid.*)

*Gil v. Mansano, supra*, 121 Cal.App.4th 739, involved a clause in a release providing for an attorney fee award to the prevailing party " '[i]n the event action is brought to enforce the terms of this [Release].' " (*Id.* at p. 742.) The defendant asserted the release as a defense to the plaintiff's complaint for fraud and successfully moved for summary judgment. (*Ibid.*) The majority opinion in *Gil* stated that even if the assertion of the defense based on a contractual release had the effect of enforcing the contract, the assertion of a defense was not the "bringing" of an action within the meaning of the attorney fee clause. (*Id.* at pp. 743–744, citing *Exxess, supra*, 64 Cal.App.4th at p. 712.) The majority in *Gil* also quoted the discussion in *Exxess, supra*, 64 Cal.App.4th at page 712, footnote 15, distinguishing an "action" from a

"defense." (*Gil, supra,* 121 Cal.App.4th at p. 744.)[6] As in *Exxess,* the majority in *Gil* also noted that the attorney fee clause at issue was very narrowly drawn. (*Gil, supra,* 121 Cal.App.4th at p. 745.)

Justice Armstrong in a dissenting opinion in *Gil* stated to the contrary that the word "action," in ordinary usage, encompassed the entire judicial proceeding, including the answer, and that an action in which the defendant asserted a defense based on a release was an action brought to enforce the terms of the release within the meaning of the attorney fee clause. (*Gil, supra,* 121 Cal.App.4th at pp. 746–747 (dis. opn. of Armstrong, J.).)

■ Both *Exxess, supra,* 64 Cal.App.4th 698, and the majority opinion in *Gil v. Mansano, supra,* 121 Cal.App.4th 739, seemed to regard the word "brings" or "brought" as narrowing the scope of the attorney fee clause. Such words, however, are not present in the attorney fee clause here at issue, so *Exxess* and *Gil* are distinguishable on this basis. More importantly, however, we believe that the analysis in Justice Armstrong's dissent in *Gil* is correct. To the extent that either *Exxess* or *Gil* suggests, or can be read to support the proposition, that the word "action" does not encompass a defense, we disagree. As did Justice Armstrong in his dissenting opinion in *Gil,* we regard the word "action" used in this context as encompassing the entire judicial proceeding, *including any defenses asserted.*

Accordingly, we conclude that this action is "an[] action . . . to . . . interpret" the ARE within the meaning of the attorney fee clause in that agreement. Shadow is the prevailing party because it successfully asserted the affirmative defense of equitable estoppel and obtained a judgment in its favor denying Windsor any relief on its complaint. Shadow therefore is entitled to a contractual attorney fee award in an amount to be determined by the trial court on remand.

c. *The Termination of the ARE Did Not Negate the Attorney Fee Clause*

Windsor further contends that Shadow's termination of the ARE relieved the parties of any obligation to pay attorney fees pursuant to the attorney fee clause. We disagree.

We construe the term "obligation" as used in the termination clause, quoted *ante,* as referring to the parties' performance obligations under the ARE.

---

[6] See also *Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 670–674 [17 Cal.Rptr.3d 427], in which a majority of the same court, over a dissent by Justice Armstrong, construed in a similar manner a statutory provision authorizing an attorney fee award to the prevailing party in an "action . . . to enforce the governing documents" (Civ. Code, § 1354, former subd. (f)).

Thus, the parties agreed that their respective performance obligations under the ARE would be terminated upon the termination of the ARE. In our view, the term "obligation" in this context does not encompass the parties' nonperformance obligations under the general provisions of the contract. Provisions regarding notices, choice of law, venue and the like appear in the ARE under the heading "General Provisions." Such general provisions alone impose no affirmative obligations on the parties with respect to accomplishing the purposes of the contract. Instead, the general provisions concern subsidiary matters relating to contract performance and dispute resolution. The attorney fee clause is such a general provision. Absent a provision expressly stating otherwise, we conclude that the parties intended the general provision of the ARE to survive the termination of the contract so as to apply mainly in the event of a later dispute. We therefore hold that the termination of the ARE did not negate the attorney fee clause.

## DISPOSITION

The judgment is affirmed. The postjudgment order denying an attorney fee award is reversed and the matter is remanded with directions to (1) grant Shadow's motion for an award of attorney fees and (2) conduct further proceedings to determine the reasonable amount of fees to be awarded. Samwood and Shadow are entitled to recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.