Filed 10/31/13  Reynolds v. Auburn Country Villa HOA CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEBORAH J. REYNOLDS, as Trustee, etc., | |
| Plaintiff and Appellant, | C068315 |
| v. | (Super. Ct. No. SCV0025861) |
| AUBURN COUNTRY VILLA HOMEOWNERS ASSOCIATION et al., | |
| Defendants and Respondents. | |

Plaintiff Deborah J. Reynolds is trustee for the Joan Martin Trust, which holds title to a condominium in a common interest community known as Auburn Country Villa. Reynolds sued the Auburn Country Villa Homeowners Association and various board members (collectively the Association), challenging an amendment to the Covenants, Conditions and Restrictions (CC&Rs) that prevented the trust from renting the condominium.

The trial court sustained the Association's demurrer without leave to amend, ruling that the action is barred by the four-year statute of limitations in Code of Civil Procedure section 343,[1] and that the rental restriction was reasonable and did not violate public policy.

Reynolds now contends:

1. The trial court abused its discretion in denying leave to amend the complaint, because Reynolds can establish that the rental restriction is void *ab initio*, i.e., that her lawsuit is not barred by the statute of limitations and that the rental restriction can be challenged at any time.

2. The trial court erred in denying Reynolds's motion for reconsideration.

3. The trial court erred in awarding the Association its attorney fees.

We conclude Reynolds fails to establish that the challenged CC&Rs provision is void *ab initio* or that the trial court erred in sustaining the demurrer without leave to amend. She also fails to demonstrate that the trial court erred in denying her motion for reconsideration or in awarding the Association its attorney fees. Accordingly, we will affirm the judgment.

BACKGROUND

The Auburn Country Villa's CC&Rs initially permitted homeowners to rent their condominiums without significant restrictions; they only prohibited short term leases. However, in February 2003, a majority of the Association approved an amendment to the CC&Rs that limited the number of permissible rental units in the community to six. The amendment was approved to protect the value of the homes in the development and to retain eligibility requirements for secondary financing. The restriction did not apply to any owners who were renting their condominiums at the time the amendment was

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

recorded, but once a "grandfathered" owner transferred title the rental restriction would apply to the condominium's new owner. Grandfathered units counted toward the six rental limitation. Those who subsequently decided to rent their home were placed on a waiting list, and had to wait until the number of rentals fell below six. A variance could be requested for a short duration based on demonstrated hardship, such as pending probate proceedings, illness, or a reasonable period of time in which to sell the unit. The amendment was recorded on March 27, 2003.

Reynolds sued the Association in September 2009 for declaratory and injunctive relief. She filed a first and then a second amended complaint after the Association successfully demurred twice to her pleadings. Her second amended complaint sought (1) to enjoin the application of the rental amendment; (2) to compel the Association to grant a hardship exemption; (3) a declaration that the rental amendment was void as applied; (4) a declaration that the amendment was void *ab initio*; and (5) damages for breach of contract.

Reynolds claimed the amendment was not approved by a majority of the Association, was not adopted in compliance with the amendment procedure set forth in the CC&Rs, and the solicitation for the amendment made false assertions about the need for the amendment. She said this violated the contract between the original developer and all of the subsequent owners, as set forth in the original CC&Rs, by illegally revoking the right to rent or lease the residential units. Reynolds further maintained that the rental restriction was void as applied because it interfered with the property rights of homeowners in violation of public policy. She also sought to pursue a class action, alleging that the existence of the CC&Rs amendment was unknown to her and members of the class because it was not included in title documents provided to buyers. She said she learned of the restriction within five years of filing the lawsuit.

3

According to a declaration filed by Reynolds, which we reference solely to provide context,[2] her mother, Joanne Martin, purchased a unit in Auburn Country Villa in September 2004, but did not learn of the rental restriction until May 2006. After her health deteriorated, Martin moved into an assisted living facility and sought a hardship exception to the rental restriction in 2006. Reynolds also made an unsuccessful request for a hardship exemption after she became trustee of the Joanne Martin Trust.

The Association demurred to the second amended complaint on the ground it was barred by the statute of limitations. The Association argued all of the complaint's allegations were premised on the invalidity of the CC&Rs amendment, but it was too late to raise such a challenge because the four-year statute of limitations in section 343 applied, and a manifest and palpable injury occurred more than four years earlier. The Association said there were no allegations demonstrating that the amendment was void *ab initio*, and rental restrictions in common interest developments have been held to be reasonable.

The trial court sustained the demurrer without leave to amend, ruling that the CC&Rs amendment was recorded in 2003, but the complaint was not filed until 2009, which meant the lawsuit was barred by the statute of limitations. The trial court also ruled that the rental restriction was reasonable and did not violate public policy.

The trial court subsequently denied Reynolds's motion for reconsideration, observing that most of the documents on which Reynolds relied for reconsideration were in her possession prior to the filing of the first amended complaint. The trial court ruled that Reynolds did not meet her burden of showing that she could not have produced the evidence earlier in the exercise of reasonable diligence. The trial court said that although

---

[2] In reviewing a demurrer, we consider all well pleaded facts and matters that may be judicially noticed (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*)), but that does not include a party's declaration.

4

Reynolds presented a "new" notice of hearing issued in January 2011, in which the Association advised Reynolds to remove her for-rent sign and imposed a $50 per day fine, that did not establish wrongful conduct or exclusion from the board's deliberations because the notice permitted Reynolds to attend and testify at the hearing.

STANDARD OF REVIEW

In reviewing the sufficiency of a complaint against a general demurrer, we consider matters that may be judicially noticed and treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. (*Zelig, supra,* 27 Cal.4th at p. 1126.) We determine whether the complaint states facts sufficient to constitute a cause of action under any legal theory. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).)

This does not mean, however, that the plaintiff need only tender the complaint to the reviewing court and hope that the appellate court can discern a cause of action. The plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law. (*Rakestraw, supra,* 81 Cal.App.4th at p. 43.) "[T]he plaintiff must show the complaint alleges facts sufficient to establish every element of each cause of action." (*Ibid.*; see also *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 655 ["the burden is on the appellant to demonstrate the existence of reversible error [and] we need only discuss whether a cause of action was stated under the theories raised on appeal"].)

When a demurrer is sustained without leave to amend, we determine whether a reasonable possibility exists that amendment may cure the defect; if it can we reverse, but if not we affirm. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Again, "[t]he burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*; accord, *Zelig, supra,* 27 Cal.4th at p. 1126.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal

5

effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.]" (*Rakestraw, supra,* 81 Cal.App.4th at pp. 43-44.)

"The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw, supra*, 81 Cal.App.4th at p. 44.)

The aforementioned rules are simply a specific application of the general rule that the trial court's judgment is presumed correct, and it is the appellant's burden to establish otherwise with legal analysis and citations to facts in the record that support the claim of error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Equilon Enterprises LLC v. Board of Equalization* (2010) 189 Cal.App.4th 865, 881; *In re S.C.* (2006) 138 Cal.App.4th 396, 408.) It is the appellant's responsibility to support claims of error with citation and authority; we are not obligated to perform that function on the appellant's behalf and may treat deficient contentions as forfeited. (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*).)

In addition, the appellant may not simply incorporate by reference arguments made in papers filed in the trial court rather than brief the arguments on appeal. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334; see also *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2.) The

6

appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made. (Cal. Rules of Court, rule 8.204 (a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)  This is not a mere technical requirement, but is "designed to . . . requir[e] the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass."  (*Landa v. Steinberg* (1932) 126 Cal.App. 324, 325; accord, *Opdyk v. California Horse Racing Bd., supra,* 34 Cal.App.4th at p. 1831, fn. 4.)

DISCUSSION

I

Reynolds contends the trial court abused its discretion in denying leave to amend the complaint, because Reynolds can establish that the rental restriction is void *ab initio*, i.e., that her lawsuit is not barred by the statute of limitations and that the rental restriction can be challenged at any time.  But Reynolds does not clearly state how she could amend her complaint to add facts establishing that any or all of her causes of action are not barred by the statute of limitations.

A

Reynolds contends the CC&Rs amendment is void *ab initio* because the Association misled the community regarding the purpose of the amendment.  She claims there was no manifest and palpable injury to the homeowners at the time the amendment was recorded.  She does not present any analysis or authority, however, concerning when something may be considered void *ab initio*, as opposed to merely voidable.

There are "limited circumstances in which a court may conclude that an instrument is a complete nullity, as opposed to being voidable pursuant to a timely challenge by a party, due to a deficiency in the instrument's creation."  (*Costa Serena*

7

*Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1191 (*Costa Serena*).)  Simply alleging that an amendment was enacted in a manner that failed to conform with the requirements for amending the CC&Rs would render the amendment voidable, not void *ab initio*.  (*Id*. at p. 1193.)  Moreover, it is not enough to allege fraud; there must be fraud in the inception that induced the homeowners to agree to an amendment that was different than the one that was actually recorded.  (*Ibid*.)  The complaint does not allege such fraud, and Reynolds does not demonstrate that she could state factual allegations establishing fraud in the inducement.

Reynolds alleged that the amendment adoption did not comply with CC&Rs requirements, resulting in the illegal revocation of the owners' right to rent their condominiums.  But the recording of the amendment in 2003 provided sufficient notice to anyone who wanted to challenge its validity, whether or not they had actual notice.  (*Costa Serena, supra,* 175 Cal.App.4th at p. 1196.)

Moreover, even if the statute of limitations had been tolled until Reynolds's mother purchased the condominium in 2004, at that point she was presumed to have constructive notice of the CC&Rs amendment whether or not it was mentioned in her deed.  (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 349.)  That was more than four years before the lawsuit was filed in 2009.  Once Reynolds's mother purchased the property, she had constructive notice of the recorded CC&Rs restriction and suffered a " 'manifest and palpable' " injury.  That triggered the statute of limitations.  (*Costa Serena, supra*, 175 Cal.App.4th at p. 1196.)  She could not wait to sue until she decided to rent her condominium; that is not a valid basis to toll the statute of limitations.  (*Ibid*.)

Reynolds argues the statute of limitations does not apply here because there was uneven enforcement of the CC&Rs amendment.  She appears to believe the rental restriction is void *ab initio* because it was not applied uniformly and only burdened people who purchased units after the amendment.  She relies on *Villa De Las Palmas*

*Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73 (*Terifaj*) to support her position, but that case holds that all owners, regardless of the purchase date of their homes, are subject to amended CC&Rs.

In *Terifaj, supra,* 33 Cal.4th 73, the homeowners association adopted an unrecorded rule banning pets prior to Terifaj's purchase of her unit. (*Id.* at pp. 79-80.) The homeowners association sued Terifaj when she violated the rule. (*Id.* at p. 80.) Following an unsuccessful motion for preliminary injunction, and while the litigation with Terifaj was pending, the homeowners association adopted and recorded amended CC&Rs banning pets. (*Ibid.*) Terifaj maintained that the amendment did not apply to her because it was recorded after she purchased her home. (*Id.* at p. 84.) The California Supreme Court held otherwise (*id.* at p. 86), explaining: "To allow a declaration to be amended but limit its applicability to subsequent purchasers would make little sense. A requirement for upholding covenants and restrictions in common interest developments is that they be uniformly applied and burden or benefit all interests evenly. [Citations.] This requirement would be severely undermined if only one segment of the condominium development were bound by the restriction. It would also, in effect, delay the benefit of the restriction or the amelioration of the harm addressed by the restriction until every current homeowner opposed to the restriction sold his or her interest. This would undermine the stability of the community, rather than promote stability as covenants and restrictions are intended to do." (*Terifaj, supra,* 33 Cal.4th at p. 84.)

B

Under an unrelated argument heading, Reynolds intimates that the statute of limitations does not apply because the rental restriction is unreasonable and hence violates public policy.

"Use restrictions are an inherent part of any common interest development and are crucial to the stable, planned environment of any shared ownership arrangement. [Citations.]" (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361,

9

372-373 (*Nahrstedt*).)  Such restrictions may "preclude alteration of building exteriors, limit the number of persons that can occupy each unit, and place limitations on -- or prohibit altogether -- the keeping of pets.  [Citations.]"  (*Id.* at p. 373.)  "[S]ubordination of individual property rights to the collective judgment of the owners association together with restrictions on the use of real property comprise the chief attributes of owning property in a common interest development."  (*Id.* at p. 374.)

Use restrictions contained in the CC&Rs of a common interest development are "enforceable . . . unless unreasonable . . . ."  (Civ. Code, § 1354, subd. (a).)  Such use restrictions are "cloaked . . . with a presumption of reasonableness [which] shift[s] the burden of proving otherwise to the party challenging the use restriction.  [Citations.]"  (*Nahrstedt, supra,* 8 Cal.4th at p. 380.)  "[S]uch restrictions should be enforced unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit."  (*Id.* at p. 382; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (US), LLC (2012) 55 Cal.4th 223, 239 (*Pinnacle*).)

The trial court determined that the rental restriction was reasonable and did not violate public policy.  Reynolds does not demonstrate that the trial court erred.  She does not refer to any legal authority establishing that rental restrictions violate public policy as a matter of law; she does not show that she pleaded facts (as opposed to legal conclusions) demonstrating that the rental restriction was an unreasonable violation of public policy; she does not clearly state the manner in which she could amend her complaint to allege the requisite facts; and she does not establish that her claim for violation of public policy precludes application of the four-year statute of limitations.  (Cf. *Moss v. Moss* (1942) 20 Cal.2d 640, 644-645 [equitable factors may not be used as an express means of avoiding the statute of limitations].)  Under the circumstances, her contention is forfeited.  (*Rakestraw, supra,* 81 Cal.App.4th at pp. 43-44; *Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

C

Reynolds states there is a "reasonable possibility" of proving that defendants illegally manipulated the amendment and harmed her. But again, she does not provide any analysis demonstrating what facts she could allege that would take her outside the statute of limitations bar.

Reynolds further asserts that the Association's counsel wrongfully obstructed access to evidence. For example, when Reynolds's attorney noticed a deposition, the Association's counsel responded that " 'there is no operable Complaint in this matter. I will not subject my clients to a fishing expedition before the case is at issue.' " Reynolds does not provide any analysis or authority demonstrating that she was entitled to depose anyone under the circumstances. She fails to demonstrate that the Association wrongfully obstructed her access to evidence or that this has any bearing on her ability to plead viable causes of action that are not barred by the statute of limitations.

Reynolds has not met her burden of establishing that the trial court erred in sustaining the Association's demurrer without leave to amend.

II

Reynolds also claims the trial court erred in denying her motion for reconsideration. She says she presented a "flood of new evidence" bearing on the reasonable possibility of amending the complaint, evidence she did not discover until February 22, 2011.

The Association counters that the appeal from the denial of the motion for reconsideration must be dismissed because an order denying reconsideration is not appealable.

"[T]his court has long adhered to the prevailing view that an order denying a motion for reconsideration is not appealable." (*Fleur du Lac Estates Assn. v. Mansouri* (2012) 205 Cal.App.4th 249, 255; *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1229-1230 (hereafter *Reese* ).) Other courts have similarly ruled

11

that an order denying reconsideration, like an order denying a new trial or denying a motion to vacate a prior judgment, is not appealable. (See, e.g., *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1458-1459; *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 768-769; *Estate of Simoncini* (1991) 229 Cal.App.3d 881, 891; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1550, fn. 2.) "[T]o hold otherwise would permit, in effect, two appeals for every appealable decision and promote the manipulation of the time allowed for an appeal." (*Reese, supra,* 73 Cal.App.4th at p. 1242.)

Nonetheless, effective January 1, 2012, after Reynolds filed her notice of appeal, section 1008 was amended to add the following: "(g) An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order."

But even if the amendment to section 1008 applied to Reynolds here, she would not meet her burden on appeal. Although she claims that new evidence was contained in her reply in support of the motion for reconsideration, she does not clearly identify what the evidence was or how it altered the legal landscape. Reynolds simply says that the trial court neglected to review the evidence in her reply prior to ruling on her motion. The trial court's ruling indicates otherwise.

As best we can discern, Reynolds contends she presented evidence that the Association manipulated the rental waiting list and imposed "the entire no-rental burden" on those who acquired their units after 2003. But she does not explain how this supports any of her causes of action or precludes the statute of limitations bar. Moreover, it was not enough for Reynolds to present new or different facts; she also had to show that those facts could not have been presented earlier with the exercise of due diligence. (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1265.) Reynolds does not demonstrate that the trial court erred in finding that most of the evidence was in her possession at the time she filed the second amended complaint; she fails in her burden

12

to show that the evidence could not have been discovered with reasonable diligence.  It is not an excuse that she may not have understood the import of the information or the need to submit it earlier.  (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 81.)

Reynolds has not met her burden of establishing that the trial court erred in denying reconsideration.

III

Reynolds further asserts that the trial court erred in awarding the Association its attorney fees.

Recovery of attorney fees is permitted when authorized by contract or statute. (*City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 488.)  We review an order granting or denying an award of attorney fees under an abuse of discretion standard. However, the determination of whether the criteria for an award of attorney fees and costs have been met is a question of law.  (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 669 (*Salawy*).)

Civil Code section 1354, subdivision (c) states:  "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."  Governing documents include the declaration of CC&Rs.  (*Terifaj, supra,* 33 Cal.4th at p. 81; Civil Code, § 1351, subd. (j).)

In addition, Civil Code section 1717, subdivision (a) allows a party to recover attorney's fees as an element of his or her costs "[i]n any action on a contract, where the contract specifically provides that attorney's fees . . . incurred to enforce [the provisions of] that contract, shall be awarded either to one of the parties or to the prevailing party . . . ."  To ensure mutuality of remedy, Civil Code section 1717 permits a party to recover attorney fees whenever the opposing party would have been entitled to attorney fees under the contract had he or she prevailed.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 611.)  Because CC&Rs are treated like contracts subject to the general rules of contract interpretation (*Pinnacle, supra*, 55 Cal.4th at p. 240), this reciprocal remedy is

13

triggered by the presence of an attorney fee provision in CC&Rs when a cause of action is based on the enforcement or violation of another provision in the CC&Rs. (Cf. *Harbor View Hills Community Assn. v. Torley* (1992) 5 Cal.App.4th 343, 346-349 [amendment to Civ. Code, § 1717 was applicable to CC&Rs of homeowners association].)

Here, section 9.01 of the CC&Rs states in relevant part: "The Association or any Owner shall have the right to enforce compliance with the Project Documents in any manner provided by law . . . . In the event the Association or any Owner shall employ an attorney to enforce the provisions of the Project Documents against any Owner, the prevailing party shall be entitled to reasonable attorneys' fees and costs . . . ." The term "Project Documents" includes the CC&Rs and amendments thereto. (CC&Rs, § 2.23.)

This lawsuit sought enforcement of the hardship provision of the CC&Rs and damages for breach of contract (the contract being the CC&Rs). Reynolds also sought to enforce the original rental provision in the CC&Rs before the amendment. Indeed, Reynolds expressly states that she brought an action to enforce the hardship and rental rights, and she seeks attorney fees if we reverse the judgment.

We conclude the Association is the prevailing party entitled to attorney fees because it successfully demurred to Reynolds's complaint and obtained a judgment of dismissal. (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1011, 1014.)

Nonetheless, Reynolds contends the Association is not entitled to attorney fees because the Association did not bring an action to enforce the CC&Rs, and a demurrer is not an action. She relies on *Salawy, supra,* 121 Cal.App.4th 664, but her reliance is misplaced.

*Salawy* involved an action by owners in a cooperative apartment building against the cooperative corporation for breach of a promise to reimburse the owners for costs incurred in temporarily relocating while repairs were made. The cooperative corporation successfully demurred based on provisions in its bylaws, and the trial court awarded it

14

attorney fees under Civil Code section 1354.  (*Salawy, supra*, 121 Cal.App.4th at pp. 667, 670.)  The appellate court reversed the fee award.  It held that the gist of the owners' action was not to enforce the governing documents, and that a defendant's demurrer or defense invoking the governing documents cannot be construed as an action to enforce the governing documents.  (*Id*. at pp. 670-671; but see *Windsor Pacific LLC v. Samwood Co., Inc*. (2013) 213 Cal.App.4th 263, 276 [an action encompasses the entire judicial proceeding, including any defenses asserted for purposes of an attorney fee award].)  Here, however, Reynolds concedes she brought an action to enforce the CC&Rs.  Thus, the Association was entitled to its attorney fees because it was the prevailing party in the action.

Reynolds also challenges the fee award on the ground the trial court lost jurisdiction over the matter when she filed a notice of appeal.  This is incorrect.  A trial court retains jurisdiction to entertain a motion for the award of legal fees while an appeal from the merits of the case is pending.  (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 360.)

Reynolds further contends the trial court abused its discretion in awarding the Association $33,620 in attorney fees based on a redacted fee summary.  In ordering the Association to submit billing statements, the trial court allowed the Association to redact privileged information, but directed that the statements must contain sufficient description of the tasks performed to allow the trial court and Reynolds to assess the reasonableness of the fee request.  The trial court determined that the redacted billing statements were sufficient to allow the trial court and Reynolds to address the fee motion.  Reynolds does not set forth any legal argument in her appellate briefs establishing that the trial court erred in permitting redacted billing statements, or that the redacted

15

summary was inadequate as a matter of law to support the attorney fee award.  Under the circumstances, the contention is forfeited.  (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

## DISPOSITION

The judgment is affirmed.  The Association is awarded its costs on appeal.


                                              _____MAURO_____, J.


We concur:


_____ROBIE_____, Acting P. J.


_____BUTZ_____, J.

16