Filed 1/5/16  Wong v. Barber CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RALAN WONG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIFFANY BARBER et al.,<br><br>    Defendants and Appellants. | A139249<br><br>(San Francisco County<br>Super. Ct. No. CUD-12-640755) |

**INTRODUCTION**

Defendants Tiffany Barber, Sarah Sharaf and Matthew Pinna were roommates in one unit of an apartment building in San Francisco owned by plaintiff Ralan Wong.  Past disputes between Barber and Wong had resulted in defendants being permitted in 2007 to keep a cat as an exception to the no-pets policy and in Barber being permitted in 2009 to keep a companion animal, specifically a dog, as a reasonable accommodation for a disability.  Upon learning that the original dog had been replaced with a new dog, and believing that Barber was not disabled, Wong served a three-day notice to cure or quit based on defendants having a dog in violation of the no-pets provision in the lease and then filed a complaint for unlawful detainer.  The jury returned a special verdict in Wong's favor, and the court awarded him damages of $41,406.00 based on the jury's determination of the fair rental value of the property.  Defendants appeal from the judgment, the orders denying defendants' motions for judgment notwithstanding the verdict and for new trial, and a discovery order.  Defendants raise issues relating to estoppel, the jury finding that Barber was not disabled, the verdict form, waiver,

1

evidentiary error, instructional error, newly-discovered evidence, jury misconduct, the litigation privilege, and the trial court's denial of defendants' motion to quash subpoenas for medical records. We conclude defendants have failed to establish that the trial court committed any prejudicial errors and will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2004, Sharaf and two other people entered into a rental agreement with Wong's predecessor (Wong's father) for the apartment in question.[1] Paragraph 12 of the written residential tenancy agreement provides: "PETS: NO pets, dogs, cats, birds, fish or other animals are allowed in or about the Premises, even temporarily or with a visiting guest, without prior written consent of Owner, excepting service animal(s) as required by law. Any such consent is conditioned upon Tenant completing and signing Owner's Pet Agreement which shall become part of this Agreement. Strays shall not be kept or fed in or about the Premises. Strays can be dangerous and Owner must be notified immediately of any strays in or about the Premises. If a pet has been in a Tenant's apartment or allowed into the building, even temporarily (with or without Owner's permission) Tenant may be charged for cleaning, de-fleaing, deodorizing or shampooing any portion of the building or Premises at the discretion of Owner."

When Wong discovered that two individuals not named on the lease, one of whom was defendant Barber, and a cat were living in the unit, he initiated eviction proceedings. The matter settled and, in August 2007, Barber was substituted on the lease for one of the original tenants.[2] The lease was also amended to add a pet agreement permitting the tenants to keep a 10-year-old gray cat. The pet agreement stated, "Tenants agree not to replace the cat described herein after it succumbs or otherwise vacates or no longer resides at the premises, and the pet prohibition set forth in the Residential Tenancy Agreement still remains in effect."

---

[1] Wong inherited the apartment building when his father died.

[2] Defendant Pinna moved into the apartment at a later time.

2

The dispute over a dog in the apartment dates back to April 2009 when Wong became aware that Barber had a dog. That month, Barber sent Wong a letter stating that she had a psychiatric disability for which her doctor had prescribed an emotional support animal. Barber acknowledged Wong's no-pets policy, but requested that she be allowed to have the dog as a reasonable accommodation for her disability. Barber included a doctor's note with her request. Wong questioned the veracity of Barber's disability claim and noted that the doctor who signed the note was a gynecologist. Barber then obtained another doctor's note from an internist, which was worded identically to the first note, and a prescription for an emotional support animal (with zero refills), and sent these documents to Wong.

Wong believed Barber was not disabled and was attempting to take advantage of the fair housing laws in order to add another pet to the household. Following attempts by Wong to obtain more information about Barber's claimed disability, in June 2009, Barber filed a housing discrimination complaint with HUD, which, apparently, was forwarded to the California Department of Fair Employment and Housing (DFEH). Wong served Barber with a three-day notice to cure or quit specifying that the dog be removed.

In August 2009, the DFEH investigation concluded that Barber was entitled to a companion animal. In an August 11, 2009 letter (August 11, 2009 Letter) to the DFEH investigator, counsel for Wong stated their dissatisfaction with the investigation that was conducted. The letter also stated: "As I told you before, based on our prior dealings with Tiffany Barber, and her blatant lie to you that the cat in the apartment does not belong to her, we believe young Tiffany Barber is manipulating the System and is not mentally or physically disabled at all. However, my client is willing to accommodate Ms. Barber for the time being, and allow her to keep both the cat and the dog in Unit #5. Please close the FEH complaint file against Ralan Wong. [¶] Since you could not reveal any more details than what you told me today, my client reserves the right to bring suit against Ms. Barber for declaratory relief with respect to the issue of her disability at the Superior Court of San Francisco." Barber withdrew her complaint and DFEH closed the case.

Barber's original dog died in early 2011 and she replaced him with a new, bigger dog. Wong became aware of the new dog in November of that year. In January 2012, Wong served a three-day notice to cure or quit based on defendants' violation of the no-pets provision in the lease.[3] Specifically, the notice stated that defendants had breached the lease: "1) by bringing a non-service dog or pet into the Premises without the prior written consent of the Owner; 2) by replacing a questionable service dog with second non-service dog or pet at the Premises without the prior written consent of the Owner; 3) by replacing your cat with an unauthorized dog after agreeing to never replace the cat after it is gone; and 4) by attempting to deceive the Owner and his representatives into believing Tiffany Barber is disabled and in need of a service animal by misrepresenting to them the facts about her mental condition." January 2012 was the last month for which Wong accepted payment of rent from defendants. Wong filed the instant complaint for unlawful detainer in March 2012.

The matter went to trial. In December 2012, the jury returned a verdict finding, among other things, that there was a landlord-tenant relationship between plaintiff Wong and defendants Barber, Sharaf and Pinna; that Wong proved defendants breached the rental contract by moving the second dog into the apartment without his prior written consent; that defendants failed to cure the breach or vacate after service of the March 2012 corrected three-day notice; that Wong did not waive any lease breaches involving the presence of a dog in the apartment; that Wong did not retaliate against defendants for Barber's assertion of legal rights; that Barber was not "a disabled person as defined by law;" and that Wong was entitled to possession of the apartment. All jury findings were by a vote of 12 to zero or 11 to one. The jury also determined the fair monthly rental value of the apartment to be $3,100. The court entered judgment for Wong, ordering that he recover possession, that the rental agreement with defendants was forfeited, and that

---

[3] The first notice was defective for failure to include contact information for the rent board; Wong served a corrected notice in March 2012.

4

Wong recover from defendants damages of $41,406 based on the fair rental value of the property.

## DISCUSSION

I.      *Standards of Review*

The issues presented in this appeal arise out of several different orders and the final judgment in the lower court.  For clarity, we set forth the applicable standards of review.

Defendants appeal from the trial court's denial of their motion for judgment notwithstanding the verdict (JNOV).  "In general, ' "[t]he purpose of a motion for [JNOV] is not to afford a review of the jury's deliberation but to prevent a miscarriage of justice in those cases where the verdict rendered is without foundation." '  [Citation.]" (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc*. (2006) 144 Cal.App.4th 1175, 1194.)  On appeal from the denial of a motion for JNOV, the appellate court reviews the evidence in the light most favorable to the prevailing party to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict.  (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) When the appeal raises purely legal questions, however, the standard of review is de novo.  (*Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 134-135.)

Defendants also appeal the trial court's denial of their motion for a new trial following entry of final judgment.  In ruling on a motion for new trial, the trial court sits as an independent trier of fact with the power to assess witness credibility, reweigh the evidence, and draw reasonable inferences contrary to those of the trier of fact.  (*Barrese v. Murray* (2011) 198 Cal.App.4th 494, 503.)  On appeal from an order denying a motion for new trial, the appellate court reviews the entire record, including the evidence, to make an independent determination of whether the claimed error was prejudicial.  (Cal. Const., art. VI, § 13; *Hasson v. Ford Motor Co*. (1982) 32 Cal.3d 388, 417, fn. 10; *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159.)

In addition, defendants seek review of the trial court's order denying their motion to quash plaintiff's subpoena for the production of defendant Tiffany Barber's medical

5

records as an order affecting the judgment. We review a trial court's discovery orders for abuse of discretion. (*Manela v. Superior Court* (2009) 177 Cal.App.4th 1139, 1145.)

II.     *Principles of Appellate Practice*

It is apparent from the briefing and the record that this case was extremely contentious and extensively litigated in the trial court, and the parties are represented by the same counsel on appeal. Appellate review, however, is not a "do-over" of the matters considered below. There are fundamental rules and principles of appellate practice that govern the types of issues and arguments that may be raised and the manner in which such arguments should be made or the facts should be stated. The presentation of this case on appeal is inadequate in a number of ways. Therefore, we will set forth some of the fundamental principles that guide our consideration of the issues.

The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956.) Failure to provide an adequate record requires that the issue be resolved against the appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; see *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) Further, "[i]t is incumbent upon the parties to an appeal to cite the particular portion of the record supporting each assertion made. It should be apparent that a reviewing court has no duty to search through the record to find evidence in support of a party's position." (*Williams v. Williams* (1971) 14 Cal.App.3d 560, 565.)

An appellant must present argument and legal authority on each point raised, which requires more than merely stating a ruling is erroneous and leaving it to the appellate court to figure out why. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. (Cal. Rules of Court, rule 8.204(a)(1); *Badie v. Bank*

6

*of America* (1998) 67 Cal.App.4th 779, 784-785.) When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.].)" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

A party who contends that a particular finding is not supported by substantial evidence is obligated to set forth in his brief all the material evidence on the point and not merely his own evidence. (*Boeken v. Philip Morris, Inc.* (2006) 127 Cal.App.4th 1640, 1657-1659.) Facts must be presented in the light most favorable to the judgment (*id.* at pp. 1657-1658), and the burden on appellant to provide a fair summary of the evidence " 'grows with the complexity of the record.' " (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739 (*Myers*); see Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must support any reference to a matter in the record with a citation to the record]; rule 8.204(a)(2)(C) [appellant's opening brief must "[p]rovide a summary of the significant facts limited to matters in the record"].) The appellant waives a claim of lack of substantial evidence to support a finding by failing to set forth, discuss and analyze all the evidence on that point. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [error is deemed to be waived]; *Myers*, *supra*, 178 Cal.App.4th at p. 749.)

An appellant's failure to register a proper and timely objection to a ruling or occurrence in the trial court will result in loss of the appellant's right to attack that ruling or occurrence on appeal. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1; *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776-777.) " ' " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the [trial] court by some appropriate method . . . .' " ' " (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755.)

Finally, an appellant has the burden not only to show error, but prejudice from that error. If an appellant fails to satisfy that burden, his argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

Thus, to overcome the presumption of correctness, an appellant must affirmatively demonstrate error in the record. Appellate courts indulge all presumptions supporting the judgment or order where the record is silent as to what was done by the trial court. (See *Steuri v. Junkin* (1938) 27 Cal.App.2d 758, 769; see also *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 ["When the record clearly demonstrates what the trial court did, we will not presume it did something different."].)

With these principles in mind, we turn to the arguments that have been advanced.

III.    *Estoppel*

Defendants raise a two-prong argument concerning estoppel. First, they contend the trial court did not let them present the issue of estoppel to the finder of fact. Second, they argue the evidence at trial on estoppel was uncontroverted and their motion for JNOV should have been granted on that basis.

" 'The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]' [Citation.] The detrimental reliance must be reasonable. [Citations.]" (*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 271-272 (*Windsor Pacific*).) "The determination of equitable estoppel ordinarily is a question of fact for the trier of fact, unless the facts are undisputed and can support only one reasonable conclusion as a matter of law. [Citations.]" (*Id.* at p. 272.)

Defendants' estoppel claim is as follows: In August 2009, Wong allowed Barber to live in the apartment with a dog in violation of the no-pets lease provision as a result of the DFEH investigation which concluded that Wong needed to accommodate Barber's disability; Wong took no action regarding the dog between August 2009 and January 2012 other than sending the August 11, 2009 Letter; Wong "intended that his

8

acquiescence in allowing . . . Barber to maintain a dog would be relied upon, since he was looking to avoid proceeding with the DFEH investigation at the time he granted the accommodation;" Barber was unaware of the true facts that Wong "secretly intended to challenge [her] *right to a dog* sometime in the future as opposed to [challenging] her asserted disability;" and Barber relied to her detriment by dismissing the DFEH complaint and continuing to maintain her tenancy rather than relocating. Accordingly, defendants contend Wong was estopped to enforce a lease provision prohibiting dogs.

Defendants fail to explicate how the issue of estoppel was in fact raised repeatedly during the proceedings. The court heard extensive argument about it pretrial in the context of defendants' motion in limine. Defense counsel argued that there was really only one document involved in deciding the issue, the August 11, 2009 Letter, and that the court should hear and decide the estoppel issue first.[4] In ruling on this motion in limine, the court denied defendants' request that equitable estoppel be heard and decided by the court as a separate and preliminary issue; rather the court ruled that it would be heard as "part of the trial."

At the conclusion of plaintiff's evidence, defendants moved for a directed verdict on several grounds, including estoppel. Plaintiff's counsel argued the merits in opposition that there was no reasonable reliance (an element of estoppel) and no voluntary relinquishment of a known right (waiver), among other arguments. The court denied the motion, advising defendants: "At this point I'm denying. You can raise it

---

[4] Defense counsel stressed that the estoppel issue was straightforward and that he would likely stipulate to "almost 100 percent of what [plaintiff's] counsel said as being evidence in support of her opposition to our estoppel argument." Defense counsel apparently gave a written stipulation to the court regarding estoppel, but the only thing clear from the record on this point is that, whatever it said, plaintiff's counsel did not read or sign the stipulation. When, at the conclusion of the extended pretrial argument on the issue, defense counsel asked whether they are "still going to proceed with the equitable estoppel argument first," the court replied no, if there was not going to be a stipulation to facts. The court said, "I think I'm familiar enough with what the issues are that we could just incorporate them into the trial and go from there." Defense counsel persisted that plaintiff's evidence was going to be "minor."

later.  But at this point, it's denied."  As support for their argument that the trial court refused to consider estoppel at all, defendants cite a statement out of context.  When defense counsel raised estoppel in the midst of his argument for a directed verdict, the court stated, "We are not talking about the issue of estoppel.  You have no equitable issues."  Defendants cite this statement in the record as the trial court's refusal to consider the issue, as though this was the trial court's final word on the matter.  In fact, defense counsel continued his argument on estoppel and other grounds for a directed verdict; plaintiff's counsel argued in opposition; and the trial court ruled on the motion as stated above.

The issue of estoppel was raised again in settling the jury instructions.[5] Defendants contend they objected to the trial court's refusal to include a jury instruction on estoppel, but the only evidence they cite is their proposed instruction; the jury instructions actually given to the jury, which did not include an instruction on estoppel; and the special verdict form used by the jury, which did not include estoppel.

In conducting our own independent review of the record, it appears that much of the discussion among the court and counsel concerning jury instructions occurred in the afternoon session on December 11, 2012, which was unreported.  The hearing on jury instructions continued the next morning outside the presence of the jury.  During a discussion of waiver, the issue of estoppel was mentioned.  The court reiterated what had apparently been its decision from the previous day regarding estoppel[6] and advised

---

[5] Given that defendants argued that estoppel was a question for the court, it is not clear (and never explained on appeal) why defendants submitted a jury instruction on the issue.

[6] The following colloquy from the jury instruction conference on December 12 is all we can glean from the record regarding this decision, apparently made on December 11 and unreported:

"[Plaintiff's counsel]:  Right.  So estoppel that we talked about yesterday does not apply in this case.

"THE COURT:  I think that's what I decided yesterday.

"[Plaintiff's counsel]:  You did."

10

defense counsel, "So put on the record that you object to my taking out estoppel and then we will move on."

From the foregoing, it is clear that the trial court decided not to instruct the jury on estoppel, but we are not able to determine whether this was because the trial court "refused to consider" estoppel, as defendants contend, or decided the issue on the merits against defendants. With no help at all from counsel on this point, we find in the record that, in response to a statement by plaintiff's counsel that "estoppel that we talked about yesterday does not apply in this case," the trial court stated, "I think that's what I decided yesterday."

In any event, the issue of estoppel was fully briefed in the JNOV motion; a hearing on the motion was held (but not reported); and the court ruled on the motion, denying it in its entirety. In their briefing on the JNOV motion, defendants argued that the trial court could still rule on the issue of estoppel post trial. The court subsequently denied the JNOV motion in its entirety in a written order stating simply that it had "considered the briefs and arguments of counsel." This answers the question of whether defendants had an opportunity to present the estoppel defense. They did.

Finally, it is for this court to review the evidence on the issue and decide whether substantial evidence supports the court's implied finding that the defense of estoppel was not established. We find no error in the trial court's denial of the JNOV on this ground. The August 11, 2009 Letter states that Wong believed Barber lied about the cat, that Barber was manipulating the system, and that Barber was not disabled. Wong's letter states that he would accommodate Barber for the time being, but he reserved the right to challenge her disability in court. A reasonable person would rely at her peril on a letter such as this, which was unequivocally not giving her a free pass to reside with pets in the future. This letter, upon which defendants' estoppel claim rests, is substantial evidence in support of a finding that reliance by Barber was unreasonable. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35 [detrimental reliance must be reasonable]; *Windsor Pacific, supra*, 213 Cal.App.4th at pp. 271-272 [same].)

11

Defendants' contention that the judgment must be reversed because "there is uncontroverted evidence supporting [their] defense of estoppel" is equally unavailing. The evidence does not compel the conclusion, as a matter of law, that each of the elements of estoppel is satisfied and that Wong is estopped to enforce the no-pets provision in the lease. (See *Windsor Pacific*, *supra*, 213 Cal.App.4th at p. 272.)

IV.    *Barber's Disability*

Whether Barber was disabled was a central issue at trial. The jury was instructed that a disability is "anything that interferes with a major life activity," and that major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." With respect to a mental disability, the jury was instructed that it includes "any mental or psychological disorder or condition that limits a major life activity," and includes emotional or mental illness, clinical depression, and chronic or episodic conditions. Question number 11 on the jury verdict form asked, "Is Tiffany Barber a disabled person as defined by law?" The jury unanimously answered no.[7]

Defendants argue the evidence at trial established as a matter of law that Barber was disabled; thus, the jury finding that she was not disabled was erroneous and the denial of defendants' motion for JNOV must be reversed. Defendants contend (1) Barbers' doctors, Kai Ng and Paul Heim, found that she was disabled, (2) the disability findings were uncontradicted and a matter solely within the knowledge of experts, and (3) the jury was bound by this uncontradicted expert testimony. Defendants base their argument on *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 313 (*Huber*), which defendants cite for the proposition that "[u]ncontradicted expert testimony on a matter solely within the knowledge of experts is deemed conclusive on appeal."[8] Defendants read *Huber* far too broadly and misstate the law. As explained in

_____

[7] The jury verdict form requested by defendants asked, "Is Tiffany Barber disabled?

[8] At oral argument, defendants' counsel cited *Tien Le v. Lieu Pham* (2010) 180 Cal.App.4th 1201, but *Tien Le* is not on point. Instead, and as correctly stated in

12

*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632, this "*exceptional* principle requiring a fact finder to accept uncontradicted expert testimony as conclusive applies *only* in professional negligence cases where the standard of care must be established by expert testimony." This is the " 'single exception' to the general rule that 'expert testimony, like any other, may be rejected by the trier of fact, so long as the rejection is not arbitrary.' [Citation.] Thus, '[a]s a general rule, "[p]rovided the trier of fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. [Citations.]" [Citation.] This rule is applied equally to expert witnesses.' [Citation.]" (*Id.* at p. 632.) As in *Howard*, this case does not present any issues of professional negligence or medical malpractice, and thus there was no reason to require the trier of fact to accept as conclusive the testimony of Barber's doctors. (See *id.* at pp. 632-633.) Under the general rule, the jury was properly instructed that it did not have to accept an expert's opinion and, in determining whether to believe that opinion, it should consider the facts the expert relied on and the reasons for the expert's opinion.

To the extent defendants argue Wong failed to contest the diagnoses of Drs. Ng and Heim, the record belies the contention. Wong cross-examined defendants' experts and Barber herself regarding her claimed disability. Both physicians acknowledged that their diagnoses of Barber were based on her self-reported symptoms. On cross-examination, Dr. Ng testified that she might not have provided written support for a patient to get a dog as a comfort animal if she knew the patient already had a cat. Dr. Heim established that the first time Barber went to see him was in June 2012, several months into this litigation. Dr. Heim did not prescribe medication for Barber. After Dr. Heim provided her with a letter to DFEH dated September 2012, Barber stopped seeing him and had no scheduled appointments with him at the time of trial.

Wong also presented evidence on the issue of Barber's disability and her credibility. Regarding the March 17, 2009 letter that bore his signature, Dr. Jones, a

defendants' appellate brief, *Tien Le* stands for the settled principle that, "[o]f course, when the facts are undisputed and the question on appeal is wholly a legal issue, the proper standard of review is independent review." (*Id.* at p. 1206.)

gynecologist, testified that he would not have signed the letter, which recommended an emotional support dog for Barber because of a psychiatric disability, and would not diagnose a mental illness in his patient because he did not have that type of expertise. Dr. Jones read an entry he made in Barber's Kaiser medical record on May 13, 2009: " 'The interval message received from the patient requesting a note to the landlord to allow her to have a pet in her apartment (to reduce stress). She affixed my signature to a template letter she downloaded from the Internet. Mentioned to the patient that I can't sign the aforementioned letter as its content is not familiar to me. If she needs a generic letter stating that pets can reduce stress and her landlord is satisfied with that, she can forward a draft to me for signature. If, on the other hand, she anticipates discordance from her landlord and requires confirmation of a greater than difficult degree of stress and subsequent need for reduction by whatever method, then I recommend she follow up with her primary care provider in the medicine clinic.' "

Wong also presented the testimony of Dr. Mark Leary, deputy chief of the department of psychiatry at San Francisco General Hospital and clinical professor of psychiatry at the University of California at San Francisco. Dr. Leary did not examine Barber, but testified about typical symptoms and treatment of patients suffering from "major recurrent depression," the diagnosis Barber had received from Dr. Ng. Dr. Leary was asked about Dr. Ng's conclusions. He noted that the questionnaire Barber completed for Dr. Ng scored at the lowest level of mild depression, and "the patient who filled it out indicated that the symptoms didn't make it difficult to function at work or to interact with others or to take care of the things of daily life. [¶] So it seemed inconsistent to me that Dr. Ng would then make a diagnosis of major recurrent depression based on the rating scale of . . . relatively minor mild depression . . . ." Dr. Leary testified, "I think it would be extremely unlikely that someone with major recurrent depression, significant clinical depression would be treated effectively with only a support animal." He also testified that people may attempt to fake psychiatric illnesses or conditions when there is something to be gained by the confirmation of a diagnosis or condition, and that it can be

14

very challenging for a physician to make the determination because it is based on the patient's report of symptoms.

The evidence pertaining to Barber's disability was far from uncontroverted. It is clear from the verdict that the jury disbelieved Barber's testimony regarding her disability and rejected the opinions of defendants' experts on this issue. The jury was entitled to make this determination, even if Wong had not called an opposing expert and defendants' expert testimony was uncontradicted. (See *Howard v. Owens Corning*, *supra*, 72 Cal.App.4th at p. 633.) Defendants have not established any error with respect to the finding that Barber was not disabled.

V.      *Separate Verdicts*

Defendants argue the trial court erred by not giving the jury separate verdict forms for each defendant and by entering judgment against Sharaf and Pinna. Defendants contend the jury was confused by the verdict form that did not require a separate finding of unlawful detainer against each tenant. In support of this argument, defendants cite a note from the jury "seeking clarification on the issue," which defendants claim "was not adequately addressed by the lower court," and declarations from two jurors stating that they were confused by the joint verdict form. Judgment against Pinna was erroneous, according to defendants, because Pinna did not sign the lease pleaded in the complaint, and Wong otherwise failed to establish a landlord-tenant relationship with Pinna. As against Sharaf, defendants contend there was no evidence that she was liable for any of Barber's alleged breaches of the lease.

These arguments have no merit. The special verdict form asked, "Was there a landlord-tenant relationship between Plaintiff Ralan Wong and Defendants Tiffany Barber, Sarah Sharaf and Matthew Pinna?" The jury unanimously answered "Yes." Defense counsel represented all three defendants, all of whom lived in the unit, paid rent and testified in support of Barber's alleged disability and need for an emotional support animal. Defendants' own proposed form of verdict was also a joint verdict and made no distinction between and among the tenants with respect to the three-day notice and breach of the lease.

15

Not surprisingly, defendants do not claim to have registered a proper and timely objection to the special verdict form. In the absence of an objection, the argument is forfeited on appeal. (*Doers v. Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d at pp. 184-185, fn. 1.)

As for a note from the jury, defendants cite to the clerk's minutes at trial, which record (1) the receipt of a note, the content of which is not specified, (2) the court discussed the note with counsel, and (3) the court provided a response to the jury. However, defendants provide no record citation to the note itself, the court's discussion with counsel, or the court's response to the jury, i.e., no substance. Again, we will not scour the record in search of support for defendants' contentions. (*Williams v. Williams*, *supra*, 14 Cal.App.3d at p. 565.)

VI.     *Waiver*

Defendants argue that Wong waived his right to enforce the no-pets provision based on the August 11, 2009 Letter and his continued acceptance of rent payments from that time until January 2012.

A finding of waiver requires the intentional relinquishment of a known right after knowledge of the facts. (See *Brookview Condominium Owners' Assn. v. Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 513.) Waiver is a question of fact to be determined in light of all the evidence. (*Id.* at p. 513.)

The issue of waiver was submitted to the jury. Question number 7 on the verdict form asked "Did Plaintiff Ralan Wong waive any lease breaches involving the presence of a dog in Defendants' apartment?" The jury unanimously answered "No." Defendants raised the issue of waiver in their motion for JNOV, arguing that the irreconcilable inconsistency between knowing of the presence of a dog in the apartment and continuing to accept the rent payments must be resolved in favor of finding that Wong waived the no-pets provision in the lease. On appeal, defendants contend "[u]ncontroverted evidence supports a finding of waiver by [Wong] regarding . . . Barber's right to maintain a dog at the premises." We disagree.

16

The evidence does not compel the conclusion that Wong waived the right to object to the dog.  Rather, there is ample support in the record for the jury's finding, which the trial court declined to disturb, including the August 11, 2009 Letter expressing doubt about Barber's disability and stating that Wong was "willing to accommodate Ms. Barber for the time being, and allow her to keep both the cat and the dog in Unit #5," and that Wong "reserves the right to bring suit against Ms. Barber for declaratory relief with respect to the issue of her disability . . . ," as well as the testimony of both Wong and his counsel regarding their intent with respect to this letter.  The trial court's ruling is supported by substantial evidence.

VII.    *Evidentiary Error*

Defendants contend the trial court prejudicially erred in admitting certain evidence during the trial.  We review the trial court's evidentiary decisions under the abuse of discretion standard.  (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1311.)  If defendants establish an abuse of discretion, we then determine whether they suffered any possible prejudice.  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1058.)

A.      *Dr. Terrence Jones*

In early 2009, Dr. Jones was Barber's gynecologist at Kaiser.  Dr. Jones's signature is on the March 17, 2009 letter Barber sent to Wong in support of her original request for an emotional support animal.  Before trial, defendants filed two motions in limine pertaining to Dr. Jones:  (1) to exclude any testimony or evidence concerning Dr. Jones pursuant to Evidence Code section 352 because "the introduction of such evidence would be more prejudicial than probative in the instant case"; and (2) to exclude improper character and credibility evidence pursuant to Evidence Code section 1101, specifically the character trait of dishonesty.  The court held a hearing pursuant to Evidence Code section 402, following which Dr. Jones testified before the jury.  As relevant here, the substance of Dr. Jones' trial testimony was that he did not actually sign the March 17, 2009 letter Barber claimed he signed attesting that she suffered from a psychiatric disability and recommending an emotional support animal.  Barber asked him to sign it, but he declined because the letter's content "was not familiar" to him.  Dr.

Jones advised Barber to see her primary care provider for such diagnosis and documentation. He offered to, and did, sign an informal note opining that pets can reduce stress. It later came to Dr. Jones's attention that Barber had affixed his signature from the informal note to the March 17, 2009 letter he had earlier refused to sign.

Defendants argue it was error to allow Dr. Jones to testify, and the error was compounded by allowing him to testify based on "unauthenticated hearsay documents." Defendants contend Dr. Jones's testimony "had no evidentiary value," and that Wong's only reason for calling him as a witness was "to make Tiffany Barber look bad." According to defendants, the trial court originally ruled the medical records subpoenaed from Kaiser were admissible as business records under Evidence Code section 1271; it later reconsidered this ruling and ruled all but one page inadmissible, but the damage could not be undone because Dr. Jones had already testified from those records.

The arguments have no merit. As the trial court stated repeatedly at the Evidence Code section 402 hearing, Dr. Jones's testimony was relevant to the issue of Barber's credibility. Where an issue at trial was whether Barber was disabled, and the evidence of her disability was Barber's testimony and the opinions of physicians whose diagnoses were based on Barber's statements to them, Barber's credibility was clearly relevant. As for the argument that Dr. Jones's testimony was improperly based on "unauthenticated hearsay documents," defendants have not adequately presented this issue for review. Defendants cite to nothing in the record other than Wong's trial exhibit list indicating that Dr. Jones's subpoenaed medical records were admitted after redaction, "Second to last page only." The court made clear at the Evidence Code section 402 hearing that the documents required redaction. Further, it is not clear that the hearsay objection is applicable in any event. The March 17, 2009 letter with Dr. Jones's purported signature was not offered for the truth, but for its falsity. (Evid. Code, § 1200, subd. (a).) Without the documents themselves or citation to any substantive discussion on the record, this argument is forfeited. (See *Maria P. v. Riles*, *supra*, 43 Cal.3d at p. 1295 [appellant has the burden to provide an adequate record]; *Williams v. Williams*, *supra*, 14 Cal.App.3d at p. 565 [parties must cite the record in support of their assertions].)

B.      *Karen Uchiyama*

Defendants contend that Wong's trial attorney, Karen Uchiyama, should not have been permitted to testify at trial.  They argue her testimony prevented defendants from receiving a fair trial because (1) "Ms. Uchiyama did not waive the attorney-client privilege until the time of trial;" (2) the jury "was not properly instructed or admonished as to the unusualness of having counsel take the stand;" and (3) Uchiyama improperly testified "about the law and her interpretation of issues rather than just the underlying facts."  However, and defendants do not mention this, it appears that defendants deposed Uchiyama in early October 2012, well in advance of trial, and called her as a witness themselves in presenting their case to the jury.  Defendants complain Uchiyama testified about the law, but they do not discuss the content of her testimony and do not cite to it in the record.  Nor do they provide any citation to any objections, argument, or rulings regarding Uchiyama's testimony.  The only citation to the record in defendants' briefs is to Wong's declaration stating he gave informed, written consent for his attorney to testify at trial and waiving the attorney-client privilege only as to her testimony.  Defendants have failed to affirmatively demonstrate error.  (See *Bullock v. Philip Morris USA, Inc*. (2008) 159 Cal.App.4th 655, 685 ["An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority."].)

C.      *Michelle Vincent and Norma Vincent*

Defendants object to the testimony of Michelle Vincent and her mother, Norma Vincent, neighbors who also lived in Wong's building, on the ground that Wong failed to disclose these witnesses in discovery.  In support of this argument, defendants cite their Motion in Limine Number 1 of Defendants Tiffany Barber, Sarah Sharaf, and Matt Pinna to Exclude All Evidence Withheld from Discovery by Plaintiff Ralan Wong, but this motion does not identify with specificity a single item of evidence defendants sought to exclude.  Defendants also make an undifferentiated citation to 65 pages of the reporter's transcript that contain section 402 hearings as to both of these witnesses, followed by their trial testimony.  In an earlier portion of the transcript, which defendants did not cite,

19

defense counsel objected to particular aspects of the proposed testimony on the ground that it was not disclosed during discovery. The trial court overruled the objection on the basis that the testimony was offered in rebuttal and was not required to be disclosed. Defendants do not mention this exchange, nor do they provide legal authority or describe the substance of the testimony to which they are objecting. They have forfeited the issue on appeal. (See *Bullock v. Philip Morris USA, Inc*., *supra*, 159 Cal.App.4th at p. 685; *Badie v. Bank of America*, *supra*, 67 Cal.App.4th at pp. 784-785.) In any event, we discern no abuse of discretion in the trial court's rulings, and defendants make no argument or showing of any prejudice.

    D.    *Evidence Code section 352*

Defendants make an omnibus argument that, despite defendants' motion in limine "to exclude evidence pursuant to Evidence Code [section] 352," the trial court "allowed significant testimony on a number of irrelevant topics which served to confuse the issues and prejudice the jury." Defendants complain about testimony regarding the service dog tag Barber obtained, testimony from Barber's employer (Kelli Marjolet), and testimony regarding Barber hosting or attending parties on grounds that this evidence was irrelevant and unduly prejudicial. In support of their argument, defendants cite their motion in limine and portions of the trial transcript containing the testimony to which they object but with only the most cursory description of the challenged evidence. There is no way to understand the import of this testimony. None of the references to the trial transcript contain objections on grounds of relevance or prejudice. Moreover, even if there was error in admitting it (and we are not concluding there was), there is no required showing of prejudice. The argument is no more than an ipse dixit.

As further support for their objection to Marjolet's testimony, defendants cite a pre-trial discovery order signed by Judge Robertson granting in part Wong's motion to compel further responses to deposition questions from Barber. In that order, the court declined to order *Barber* to answer questions regarding employment, but required her to answer questions regarding her disability. Based on this order, defendants argue *Marjolet's* testimony "was specifically at odds with an earlier ruling prohibiting . . .

20

Wong from obtaining information related to . . . Barber's employment because it was not sufficiently related to her tenancy." The pre-trial order regarding the scope of Barber's deposition provides no support for defendants' argument that Marjolet's trial testimony was improperly admitted.

Finally, defendants' bare assertions that allowing the objectionable testimony of Dr. Jones, Uchiyama, the Vincents, "as well as testimony on other collateral issues," "is likely to have resulted in a different outcome for [defendants]" is wholly inadequate to establish prejudicial error. (See *Century Surety Co. v. Polisso, supra,* 139 Cal.App.4th at p. 963.)

VIII. *Instructional Error*

Defendants contend the trial court erred in failing to give three of their proposed instructions to the jury. "A party is entitled to an instruction on each theory of the case that is supported by the pleadings and substantial evidence if the party requests a proper instruction. [Citations.] A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomprehensible to the average juror, and ordinarily has no duty to modify a proposed instruction. [Citations.] A court may refuse a proposed instruction if other instructions given adequately cover the legal point. [Citation.] Moreover, the refusal of a proper instruction is prejudicial error only if ' "it seems probable" that the error "prejudicially affected the verdict." [Citations.]' [Citation.]" (*Bullock v. Philip Morris USA, Inc.*, *supra*, 159 Cal.App.4th at pp. 684-685.)

First, according to defendants, the court should have instructed the jury that "The Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Accommodations Under the Fair Housing Act 7-8* (May 17, 2004) ('Joint Statement'), *available at www.hud.gov/offices/fheo/library/huddojstatement.pdf*, is entitled to substantial deference even where it did not result from a notice-and-comment rulemaking period." However, defendants provide no discussion regarding the relevance of this document to the proceedings, and there is no indication that the document was admitted in evidence or even proffered.

21

Second, defendants contend the court should have instructed the jury that "Under the law, a landlord is not entitled to a tenant's medical records. A landlord is only entitled to confirmation of disability, proof of which can even be provided by the tenant." However, the law cited by defendants in support of this instruction, Government Code section 12940, subdivision (e), pertains to employment, not housing.

Third, defendants argue the court should have instructed the jury that "Jurors are not entitled to arbitrarily disregard a medical determination." This instruction is argumentative on its face, and other instructions properly advised the jury on evaluating expert testimony. (See *Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 475 ["A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomplete."].)

Defendants also argue, without more, that "the lower court's refusal to administer [defendants'] proposed instruction on waiver resulted in a misstatement of the law on the subject." There is no discussion of the differences between the instruction requested and the instruction given. There is no analysis of why or how the instruction given was incorrect, and no citation to authority. By failing adequately to articulate or support their argument, and failing to cite to the relevant portions of the trial court record detailing any discussion and rulings on jury instructions, defendants have forfeited this contention. (See *Bullock v. Philip Morris USA, Inc.*, *supra*, 159 Cal.App.4th at p. 685; *Badie v. Bank of America*, *supra*, 67 Cal.App.4th at pp. 784-785.)

IV. *Motion for New Trial*

Defendants filed a motion for a new trial on a number of grounds, which was denied. Defendants contend the trial court erred in denying the motion based on newly discovered evidence and jury misconduct. We will address each argument in turn.

Code of Civil Procedure section 657, subdivision (4), authorizes the grant of a new trial on the basis of "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." The moving party must establish that the evidence is newly discovered; that he or she exercised reasonable diligence in discovering and producing it; and the

22

evidence is material to the moving party's case. (*Plancarte v. Guardsmark, LLC* (2004) 118 Cal.App.4th 640, 645 (*Plancarte*).) The trial court's "broad discretion in ruling on a motion for new trial is accorded great deference on appeal." (*Id.* at p. 645.) In reviewing the denial of a motion for new trial, however, we are obliged to review the entire record to determine independently whether the asserted error is prejudicial. (*Ibid.*)

As described by defendants, the newly discovered evidence at issue is records from "Cross Creek Programs, a treatment and education facility in Utah that [] Barber attended in 1994-1995." Defendants contend this evidence was material to their defense of disability discrimination and failure by Wong to reasonably accommodate Barber's disability. Defendants submitted the declarations of Tiffany Barber, her mother Carole Barber, and Beverly Carayas, an employee of Youth Foundation, Inc., which "is responsible for holding all records for Cross Creek Programs since Cross Creek Programs ceased operations." The two Barber declarations speak to their efforts before, during, and after trial to locate records from various sources. The Cross Creek Programs records were ordered sealed by the trial court and have not been provided to this court. These records were not discussed at the hearing on the motion for a new trial. Other than the bare assertion that the documents are material, defendants offer no further basis for why they support a new trial. In the absence of the records themselves or any other evidence of their content, we cannot make any determination as to their materiality. Accordingly, defendants have failed to establish prejudice. (See *Plancarte*, *supra*, 118 Cal.App.4th at p. 645.)

Defendants also claim their motion for new trial should have been granted "on grounds of prejudicial jury misconduct where such misconduct consists of a juror making improper statements during deliberations."

In evaluating a motion for new trial based on jury misconduct, the trial court must undertake a three-step inquiry. (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345.) First, it must determine whether the affidavits supporting the motion are admissible. Second, if the affidavits are admissible, the court must determine whether the facts stated therein establish misconduct. The moving party bears the burden of establishing juror

23

misconduct. Third, assuming misconduct, the trial court must determine whether the misconduct was prejudicial. (*Barboni v. Tuomi*, *supra*, 210 Cal.App.4th at p. 345.)

On appeal, we review the trial court's decision regarding the admissibility of the affidavits under the abuse of discretion standard. We review for sufficiency of the evidence the trial court's determination of whether misconduct occurred, accepting the trial court's credibility determinations and findings on questions of fact if supported by substantial evidence. Finally, we review the entire record, including the evidence, and make an independent determination as to whether any misconduct was prejudicial. (*Barboni v. Tuomi*, *supra*, 210 Cal.App.4th at p. 345.)

According to defendants, "one juror admitted during post-verdict questioning that when Dr. Jones testified, she drew a nail in her juror notebook to symbolize 'the final nail in the coffin.' " In support of this point, defendants submitted the declarations of defense counsel and Juror Number 7. Defendants also contend that, during deliberations, "the same juror referred to Dr. Jones' testimony as 'the smoking gun.' " On this point, defendants submitted the declarations of Juror Number 4, who "personally heard one juror refer to the evidence of Dr. Jones's testimony as 'the smoking gun,' " and Juror Number 7, who "personally heard multiple jurors refer to the evidence of Dr. Jones's testimony as 'the smoking gun.' " According to defendants, "[s]uch a prejudgment made while the trial was ongoing represents clear juror bias and is sufficient for a finding of juror misconduct." Further, defendants contend Wong "failed to rebut the presumption of prejudice."

Defendants provide no citations to the record for the trial court's consideration or analysis of the admissibility of the affidavits, whether any misconduct occurred, and, if so, whether any misconduct was prejudicial. However, notwithstanding the utter absence of citation to the arguments raised below, under our obligation to review the entire record on appeal from the denial of a motion for new trial, we have undertaken a review of the moving and opposing papers that were filed and the transcript of the hearing.

At the hearing, the trial court was concerned about the juror having prejudged the case, but advised the parties that, in light of the verdict, the misconduct was not

24

prejudicial. The court invited further briefing on the issue of prejudicial juror misconduct and both sides filed supplemental briefs. Thereafter, the court summarily denied the motion.

Thus, it appears that the trial court found the declarations admissible, concluded that juror misconduct had occurred, but further concluded that the misconduct was not prejudicial. We need not revisit the trial court's determinations concerning admissibility and misconduct because we agree there was no showing of any prejudice. Even if the juror who drew the nail and described testimony as "the smoking gun" did prejudge the case, the jury voted 12 to 0 or 11 to 1 on all special verdict questions. Defendants have not established that the verdict was affected by this juror's vote and offered no evidence other than speculation that any other juror prejudged the case. There is no reason to presume that the juror who may have prejudged the case persuaded some other juror to engage in misconduct. (*Barboni v. Tuomi*, *supra*, 210 Cal.App.4th at p. 345.)

X.. *Eviction Based on Privileged Acts*

Defendants contend Wong's three-day notice to cure or quit sought to evict them based on privileged acts, and it was therefore void and could not support an unlawful detainer action. The argument is based on the fourth alleged breach in the notice, which advised defendants that they were in violation of the no-pets lease provision by "attempting to deceive the Owner and his representatives into believing Tiffany Barber is disabled and in need of a service animal by misrepresenting to them the facts about her mental condition."[9] Defendants argue that Wong sought to evict them because of Barber's assertion that she was disabled and her request for a reasonable accommodation for that disability. Her request was "a communication made in connection with the anticipated litigation of the unlawful detainer as well as any lawsuit arising from [Wong's] refusal to grant such a reasonable accommodation." As such, according to defendants, Barber's communication was "an absolutely privileged communication"

_____

[9] The other three alleged breaches pertained to having a non-service dog at the premises without prior written consent of the owner.

25

under the litigation privilege set forth in Civil Code section 47. Defendants also argue that, because the unlawful detainer was based in part on protected activity, "the entire cause of action should be stricken as is the rule in SLAPP lawsuits."[10]

Defendants' argument does not identify any specific communication and contains no citation whatsoever to the record. We cannot even tell from defendants' briefing whether the litigation privilege was raised in the court below. From our independent review of the record in connection with the motion for new trial, it appears that they raised the litigation privilege in their motions for summary judgment and JNOV, both of which were denied. To the extent we have any obligation to consider this argument, we discern no miscarriage of justice. (See *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, *supra*, 144 Cal.App.4th at p. 1194.) Resolving conflicts in the evidence and drawing all reasonable inferences in favor of the prevailing party, defendants have not established the applicability of the litigation privilege in this case., i.e., that the unlawful detainer action was based, in whole or in part, on Barber's request for accommodation for a disability. Wong initiated the proceeding because he was convinced that Barber was not disabled, in which case defendants breached the no-pets provision in the lease by keeping a pet dog in the apartment. The question of whether Barber was disabled was submitted to the jury, which answered unanimously that she was not. Thus, she was not entitled to a service animal, the sole exception to the no-pets provision. The jury also found by a vote of 11 to 1 that Wong did not retaliate against defendants because of Barber's assertion of her legal rights. Neither the litigation privilege nor the anti-SLAPP statute is applicable here.

XI.     *Motion to Quash Medical Records Subpoenas*.

Defendants contend the trial court erred in denying their Motion to Quash Medical Records Subpoenas. The ruling was error, they contend, because the ruling allowed Barber's "private, privileged medical records to be disclosed improperly."

---

[10] Apparently this is a reference to the anti-SLAPP (strategic lawsuit against public participation) statute, Code of Civil Procedure section 425.16.

26

Once again, defendants have failed to cite any relevant authority or any pertinent portions of the record in support of their contention. The argument is forfeited. (See *Bullock v. Philip Morris USA, Inc.*, *supra*, 159 Cal.App.4th at p. 685; *Badie v. Bank of America*, *supra*, 67 Cal.App.4th at pp. 784-785.)

## DISPOSITION

The judgment and the orders appealed from are affirmed. Wong is awarded his costs on appeal.


_____
Miller, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.